Good morning. Vince Branca, Federal Defenders, on behalf of Mr. Jimenez. Cerrone, Grajeda, and Jaron Salinas are all cases interpreting the mens rea element of California Penal Code 245 under the Taylor categorical approach. But Cerrone's recent en banc decision on the mens rea element of the Penal Code 245 helps you. It looks like that's, unless I'm mixing up cases in my memory, which is quite possible, I thought that was about crime of moral turpitude. And I can't see why it would matter to the crime of violence. Because the first step of the Taylor categorical analysis of a crime of moral turpitude is to identify the elements of the state offense. So even though there's different ultimate inquiries, both under the crime of violence definition and under the crime involving moral turpitude definition, you have to take that first step as interpreting California law. And when you do that, when you then compare what Cerrone said Moral turpitude, it used to mean sex or dishonesty. It doesn't anymore. Nobody knows what it means anymore until somebody gives an authoritative interpretation. But violence, they know what it means. Yes. But the first step to determine, there might be some confusion about what crime of moral turpitude means, but everyone is clear, and this is in Cerrone also, that you first and this Court does an analysis of identifying the elements of the state offense. And it is then that they will apply those elements to whatever definitions of crime of moral turpitude. And that is the same of what happens under a crime of violence inquiry. You identify the elements of the state offense and then apply them to the definitions. And see, what happens if you compare what Cerrone said about California mens rea, it's directly inconsistent with what Grijalda and her own Selena said. In what way? So what is it about Cerrone that you think is inconsistent with Grijalda? Cerrone makes clear that under California law, you don't have to have the intent to commit a battery. Under her own Selena's and under Grijalda, both of those courts concluded that you had to have the intent to commit a violent act. But they were relying on a California Supreme Court decision, U.S. v. Williams, which said that intent was an element of the crime. So that was the California court interpreting its own statute. No. Williams actually says the opposite, that the intent is not an element of the intent to cause force against someone else is not an element of the California offense. All they said is you have to have an intentional act. And that intentional act is simply something like driving a vehicle. As Navarro's case, the driving a vehicle case, it's not at all like the case where the Supreme Court said drunk driving is not a crime of violence. It's, the facts in that case, as I recall, were the guy intentionally ran a red light when an intersecting car was visible to him. It's a whole lot more like the kind of reckless disregard for human life and manslaughter than a mere driving offense. Well, after Leocal, this Court had the case of Fernandez-Ruiz. And Fernandez-Ruiz actually uses an exact example towards Asnabole. Fernandez-Ruiz said something like intentionally or knowingly running a red light is something that is recklessness at most and does not qualify as an intentional conduct. There's running a red light and running a red light. There's the running a red light where the left turn arrow comes on green and so you start driving and you didn't notice that for your lane it's still red. And then there's the running a red light when you see that the light is red and you see that a car is driving across and you drive through anyway. It's an entirely different mental state, and as Navarro's is the second. I disagree with what, well, two points there. The first point is running the red light when you don't see it. That would be a pure negligence type standard. And that, people versus Williams, expressly says recklessness or criminal negligence is not enough to constitute assault under the statute. If you read footnote four of Williams, it explains that a little bit more. And what it says, when we use the word recklessness, we're meaning in its traditional sense that it's not negligent. And under the traditional standard of negligence, it's what you can be held liable for what you knew or should have known. So California is slightly above negligence because you would have to have known facts, such as that the light is red, and then into the act of crossing that. But that's below recklessness because what California doesn't require is that consciousness of the risk and the conscious avoidance of the risk that occurs. Meaning, under California law, you can honestly believe, even if you see the red light, other cars, if you honestly believe that you can make it through that intersection, you can still be found guilty under California law. So Williams, if I'm understanding it correctly, says that you have to intentionally commit an act, number one. Number two, knowing facts from which you would conclude that violence is likely to result, or something along those lines. Right, so far? Knowing facts that a reasonable person could conclude that force would be done. And that's, that interpretation was on the boards when Grajeda and Peron were decided, right? The problem is, is- Am I right? Yes, Williams was on the board. And nothing changed. Because the California Supreme Court didn't change anything after Williams and before Cerrone. And Cerrone's reading the same cases that Grajeda and Perron is reading, right? Yes, but there's a key difference. Grajeda found that there is ambiguity in California law. That even at reading Williams, that some parts of Williams suggest you don't have to intend a battery. And other parts of Williams suggest that you do have to have the intent to commit a violent act. And it didn't resolve that. It punted to her own Salinas, which only looked at one part of the definition of Williams. And didn't list all the other explanatory language, which Cerrone adopts as the definition. And that's the key part. It's Cerrone coming in and saying, look, some lines of Williams may be ambiguous. Ambiguous. Ambiguous. But if you look at this entire definition, which we now adopt, that is a standard that's lower than even recklessness. I'd like to reserve some time for rebuttal. Well, is this a case where, like Cerrone, do you think that we need the Board of Immigration Appeals determination on this of whether it fits? Absolutely not, because in the immigration context for crime of moral turpitude, that is a decision that gets some Chevron deference. But this, looking at particularly in the guideline context, this is for this court to decide. Okay, I just want to make sure of that, because it seems like we should be deciding it the same way, regardless of the context, because we're looking at a generic definition, right? And that's my point, that if you look at California law, you have to interpret it the same way. And if you look at what Cerrone says about Williams, it's totally inconsistent with what Heron and Grajeda say about Williams. All right, thank you. Good morning, Your Honors. May it please the Court, Mark Rahe for the United States. Good morning. Good morning. This Court is not starting on a blank slate in this case, as you know. In United States v. Grajeda five years ago, this Court squarely found that the mens rea, Cal Penal Code 245, satisfies the generic definition of a crime of violence. Now, my opponents would have you believe that a case that came out a few months ago, Cerrone v. Holder, which was decided in an entirely different context, could somehow cast doubt on that case, but realize this is a very narrow context before this panel today. Your Honors, the only question before you is whether Cerrone is clearly irreconcilable with Grajeda, and as this Court pointed out in United States v. Dunn, that is not a low standard. It's not enough just to bring a case in tension or to cast some doubt. Has to be clearly inconsistent, has to be on point. As Judge Kleinfeld alluded to in my opponent's presentation, a crime of moral turpitude is an entirely different animal than a crime of violence. In fact, we cite authority in our brief, which says Castrojon-Garcia is one of the cases from this circuit, it is not the case that every categorical crime of violence is also categorically a crime involving moral turpitude. And the BIA, in a case called Enre Breva Perez, has echoed that, saying some of the most common crimes falling within the definition of a crime of violence do not necessarily involve moral turpitude. So what you're saying is that even if Cerrone, even if somebody might read Cerrone as having some nuanced differences in how it reads the underlying California cases, that's not enough to make it, quote-unquote, irreconcilable with the case that's on point. Absolutely, but I would go a step further and say there is nothing in Cerrone that changed the way that Grajeda looked at California law. I mean, when I first came upon this argument a few months ago and I hear, oh, Cerrone somehow implicitly overruled Grajeda, a case that it never mentions, by the way, and, in fact, the term, crime of violence, is only found once in the entire Cerrone opinion in a footnote, I thought to myself, wow, is there a new California Supreme Court case? And then I start reading it, no, absolutely not. It's reading, as Your Honor pointed out, or I believe Judge Wardlaw did, it's relying on People v. Williams, which was decided in 2001. That was squarely before the court in Grajeda. They both rely on People v. Williams, but I guess the argument is they interpret People v. Williams differently. Well, I think what he's saying, when you look at it, they're saying, look, Williams has some language that helps the defense. It has some language that helps the government. We're deciding that it helps the government. There's another theme that the defense has presented. They cite the 2010 Supreme Court case, the United States v. Johnson, as saying that case somehow came up with a new rule that we're now, when applying the categorical approach, that a circuit court of appeals is bound by a State court's interpretation of the law. That has always been the rule here in the Ninth Circuit, the 2008 case called Jennings, 2006 case called Reina Rodriguez. So even when Grajeda was decided in 2009, the Court knew that it was bound by the California court's interpretation. You see nothing new in Cerrone. All Cerrone did was say, you know what, in the crime of moral turpitude context, the BIA relied on two cases. One of them was called Barber. One of them was called GR. One was from the 50s. One was from the 60s. Both of them predated the categorical approach. So what the en banc court said was, we're sending it back to the BIA to determine, in the first instance, because we defer to them when it comes to crime of moral turpitude. That's another interesting thing to point out. The Cerrone holding itself really was no absolute holding about the mens rea of 245. It did discuss Williams in detail and relied on Williams as the definitive word on what the mens rea was in California. As did Grajeda. And the other interesting thing about Cerrone, because again, what's the issue in front of Cerrone? Crime of moral turpitude. As I noted at the beginning of my presentation, the considerations that go into a crime of moral turpitude are different than crime of violence. For a crime of moral turpitude, you typically have to have evil intent. As Judge Kleinfeld pointed out, the definition's expanded. Now you need depravity, evil act. You need an intent to injure. You need a causation of injury. You need a protected class of victim, such as peace officer or children. When you read through Cerrone, to the extent Cerrone says, you know what, 245 doesn't have these, that would seem to count against a crime of moral turpitude. But then on the other end, they say, to the extent 245 requires use of a deadly weapon, that's an aggravating factor that sometimes the BIA says counsels in favor of a finding of crime of moral turpitude. Alito, I'm curious about something. I've been trying to think of whether there could be overlap. Your straightforward ADW, somebody confronts somebody else, calls him a name, and attacks him with a weapon. That's pretty much the way the definition is. Crime of moral turpitude, they intend to do some sort of harm, and they do it, and in some way that's depraved, and the difficulty, I think Judge Bay appointed it that. Nobody knows what that means anymore, we use the word the way we used to. And I've been trying to think of overlap, and the only one I could come up with as a hypothetical possibility would be poisoning. Instead of standing in front of somebody, calling them a name, and shooting them, what you do is put poison in his coffee. Have there been any California cases about which one that fits? Not to my understanding, Your Honor, no. I don't know. But, I mean, it's an interesting proposition. Whether it could fit both, whether the prosecutor could indict in the disjunctive? Unfortunately, Your Honor, I don't know the answer to that, but I would just say that's, you know, that doesn't carry the defense burden, though. I mean, the only issue in front of this Court is whether it's a crime of violence. And as I pointed out, this Court has already held as much in Grajeda and her own Salinas. Whether it happens to be a crime of moral turpitude is an entirely different matter. I mean, in question- There weren't any California cases? Back in the 80s, all these people were poisoning medicines and then putting them back on the drugstore shelves. And no California cases about that? Not that I'm aware of, Your Honor, no. That would help sort it out. I'm sorry I don't have those cases at my fingertips, but- I'm not aware of any. I don't know if any exists. I thought you might know. But I guess to that effect, though, my point being, and when you look at Castro-Jones-Garcia, this Court has examples, simple kidnapping. Castro-Jones-Garcia said, you know what, it's not a crime involving moral turpitude because it has no evil intent. But in Delgado-Hernandez v. Holder, this Court said, that's all right, it's still a crime of violence because it has a substantial risk of injury. California Penal Code 273.5, infliction of corporal injury on a spouse. In United States v. Larco-Yeno, this Court says, you know what, that's a crime of violence. It has as an element the use, attempted use or threatened use of force. But in Morales-Garcia v. Holder, the Court says it's not a crime of moral turpitude because it doesn't necessarily require a victim and a trust relationship. All of this goes back to what I say again, as interesting as these issues might be to argue in the first instance, that's not what this Court this morning is sitting here to do. We have clear binding precedent on the books. The only question is whether this intervening authority is clearly reconcilable. This is apples and oranges. If Cerrone is involving crime of moral turpitude and there's demonstrated precedent from this Court saying we're totally at peace with the idea that some crimes can be categorical crimes of violence without being categorical crimes involving moral turpitude, that should end the question right there. The fact that Cerrone makes zero mention of grajeda also should lead this Court to seriously doubt that it somehow meant sub silentio to overrule grajeda in the myriad of cases that have followed it. The fact that the term crime of violence only appears once in Cerrone, at 747F3rd, at 780, in a parenthetical for a collateral point, should make this Court conclude that the cases are not clearly reconcilable. And finally, to the extent that Cerrone did not rely on any California state authority that wasn't before this Court in grajeda, again, there's no clear reconcilability. So unless this Court has any further questions, the government would submit on that. Okay, just to eliminate something, there's no argument here at all about divisibility or decams or any of this. There's nothing that takes us into modified categorical at all in this one? Correct, Your Honor. Okay, that's all I have. Okay. Thank you. Thank you. Do you want a minute to repeat? Try to be brief. The bottom line here is this court can't have two competing definitions of what California mens rea for 245 is. And Cerrone gives one definition, and that is that you do not have to intend to commit a battery. The earlier cases saw confusion, and they adopted a different version, that you do have to have the intent to commit a battery. And that is the irreconcilability. You can't have these two definitions out there. Cerrone was on bonk, and you have to follow that one. Thank you. All right, thank you very much, counsel. U.S. versus Jimenez is submitted.
judges: Kennelly, Kleinfeld, Wardlaw